UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GWEN DAIGLE,<br><br>　　　　　　　　　　Plaintiff,<br><br>v.<br><br>CITY OF OCEANSIDE *et al.*,<br><br>　　　　　　　　　　Defendants. | Case No.: 19-CV-1180-BAS(WVG)<br><br>**ORDER GRANTING MOTION FOR APPOINTMENT OF GUARDIAN AD LITEM**<br><br>**[Doc. No. 22.]** |

Pending before the Court is Plaintiff Hunter Willow Munsterman's motion for her appointment as guardian ad litem of her minor half-sister, Plaintiff R.A.Q. Defendants both oppose this appointment on the basis that Munsterman and R.A.Q.'s relationship as co-claimants in this litigation creates a potentially disqualifying conflict of interest. The motion to appoint Munsterman as guardian ad litem is GRANTED.

## I. BACKGROUND

In her First Amended Complaint, Plaintiff Gwen Daigle alleges that, on October 19, 2018, she was arrested for public intoxication by City of Oceanside police officers. She lost consciousness and then awoke in a jail cell at the San Diego County Sheriff Department's Vista Detention Facility. About a year later, on October 14, 2019, Plaintiff Daigle passed away as a result of an intracranial hemorrhage. On February 2, 2020,

Plaintiff's counsel filed, and the Court granted, an *ex parte* application to substitute Plaintiffs and for leave to file a second amended complaint. The application sought to substitute Deborah Lee Carman, Brandon Lee Daigle, Hunter Willow Munsterman, individually and as guardian ad litem for her minor half-sister R.A.Q., who is 13-years-old., as plaintiffs. Plaintiff Munsterman then filed a separate application to be appointed as guardian for minor Plaintiff R.A.Q.

Defendants oppose Munsterman's appointment based on her status as a co-plaintiff in this case in addition to her familial relationship with R.A.Q. They contend this relationship and status creates a potential conflict of interest. The County provides the contours of this potential conflict:

> Munsterman serving as the guardian ad litem for R.A.Q. is rife with potential conflicts because a component of their claimed damages is the value of their respective relationships with their mother. As the Court is aware, there is no set value for such a relationship. Rather, their corresponding relationships with their mother will be compared to determine what each Plaintiff's loss is worth. As a result, Munsterman and R.A.Q. may both have an interest in downplaying the nature and extent of the other's relationship with their mother. Even more troubling, as guardian ad litem, Munsterman would have the ability to control the litigation on behalf of R.A.Q. even the right to settle R.A.Q.'s case, when it may not be in R.A.Q.'s best interest. In fact, one potential benefit of Munsterman agreeing to settle R.A.Q.'s case before trial is that doing so may increase the value of Munsterman's case.

(Doc. No. 29 at 5.)

## II. LEGAL STANDARD

Rule 17(c) establishes certain rules regarding representation of minors and incompetent persons in federal court actions. First, for individuals "with a representative," the Rule provides that "[t]he following representatives may sue or defend on behalf of a minor or an incompetent person: (A) a general guardian; (B) a committee; (C) a conservator; or (D) a like fiduciary." Fed. R. Civ. P. 17(c)(1). Second, for individuals "without a representative," the Rule provides that "[a] minor or incompetent person who does not have a duly appointed representative may sue by a next friend or by guardian ad

litem. The court must appoint a guardian ad litem—or issue another appropriate order—to protect a minor or incompetent person who is unrepresented in an action." Fed. R. Civ. P. 17(c)(2).

Pursuant to Rule 17(c)(2), the federal court thus has the power to appoint a special representative for a minor or incompetent plaintiff. *United States v. 30.64 Acres of Land,* 795 F.2d 796 (9th Cir. 1986). "The role of the guardian ad litem is to protect the incompetent person's rights in the action, to control the litigation, to compromise or settle, to direct the procedural steps, and make stipulations." *Golin v. Allenby*, 190 Cal. App. 4th 616, 644 (Cal. Ct. App. 2010). As a general matter, the decision whether to appoint a guardian ad litem is "normally left to the sound discretion of the trial court." *United States v. 30.64 Acres of Land*, 795 F.2d 796, 804 (9th Cir. 1986).

### III. DISCUSSION

While the potential for a theoretical conflict exists, this Court is not persuaded that an actual conflict exists now. The Court first notes that Defendants' reliance on *Hernandez v. Starlight Mgmt-17 LP*, No. CV-17-3661-PA(FFMx), 2017 U.S. Dist. LEXIS 151115 (C.D. Cal. Aug. 31, 2017) is misplaced for several reasons. First, that order is an unpublished in-chambers order from the Central District of California. Second, the decision to not appoint the guardian ad litem was made with no analysis and was based solely on the fact that the guardian ad litem was related to the incompetent. Third, the reasoning in that order was based simply on the court's "concern" that the two were related and that this relationship "may" create a conflict of interest. The Court respectfully disagrees with this reasoning for the reasons stated below.

Further, Defendants do not cite or discuss the effect of *Elliott v. Versa CIC, L.P.*, 328 F.R.D. 554 (S.D. Cal. 2018)—a recent published order issued by the very district judge in this case. In *Elliott*, Judge Bashant initially appointed the co-plaintiff daughter as guardian ad litem for her co-plaintiff mother. After two years of litigation, the defendants filed a motion to remove the daughter as guardian ad litem. Judge Bashant denied the defense's motion and specifically addressed the weaknesses of *Hernandez*. Although the

defense in *Elliott* had raised more specific reasons that a potential conflict existed, Judge Bashant nonetheless found the guardian's removal was not warranted in part because the Court would ultimately have the authority to approve or reject any settlement that disfavored the incompetent. Additionally, because the case had not settled and the Court had not been tasked with approving a settlement, any potential conflict was inapposite given the procedural posture of the case. Thus, the potential conflict was speculative and premature.

Judge Bashant's reasoning in *Elliott* applies here as well. Although the County contends Munsterman may have the incentive to secure more settlement funds for herself to R.A.Q.'s detriment, such a scenario is far too speculative at this stage. As an initial matter, this case may never settle and may go to trial instead. Under that scenario, this potential conflict never materializes. Second, given that Munsterman has taken R.A.Q. into her home and now cares for her food, shelter, and security needs, it seems unlikely that Munsterman would turn around and swindle her half-sister in this case. If the Court's reliance in Ms. Munsterman ultimately is shown to be misplaced, the Court will have the authority to remove Munsterman as R.A.Q.'s guardian if the need arises in the future. *Elliott*, 328 F.R.D. at 556 ("[I]n its discretion, the Court may remove a guardian ad litem if she acts contrary to the best interests of the minor or incompetent plaintiff, has a conflict of interest with the minor or incompetent plaintiff, or demonstrates an inability or refusal to act.") Being on notice of this now, Munsterman will be aware that this Court—which will have the responsibility to approve any settlement—will direct a scrutinizing eye towards any settlement of R.A.Q.'s claims to ensure Munsterman has faithfully carried out her duties to R.A.Q. But for now, the potential conflict identified here is too speculative and premature to justify denying the motion.

/ / /

/ / /

/ / /

/ / /

### IV. CONCLUSION

Based on the foregoing, Munsterman's motion for her appointment as R.A.Q.'s guardian ad litem is GRANTED.

IT IS SO ORDERED.

DATED: April 15, 2020

Hon. William V. Gallo
United States Magistrate Judge